IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

TYLER RICH,

    Plaintiff,

v.

                            Civil Action No. 18-C-1405
                            Judge Jennifer Bailey

FCA US LLC, a foreign corporation,
URSE DODGE, INC., a West Virginia
corporation, and FAIRMONT FEDERAL
CREDIT UNION,

    Defendants.

2018 NOV 15 AM 9: 38

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

## AMENDED COMPLAINT

AND NOW comes Plaintiff herein, by counsel, and respectfully represents unto the Court as follows:

### PRELIMINARY STATEMENT

1.    This is an action for money damages, declaratory and injunctive relief filed pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"), the Uniform Commercial Code ("UCC"), the Magnuson-Moss Warranty Act, and applicable state common law theories of liability, and arising out of the sale of a new motor vehicle by Defendants, FCA US LLC, hereinafter "Manufacturer," Urse Dodge, Inc., hereinafter "Dealer," and Fairmont Federal Credit Union hereinafter "Lender."

2.    Plaintiff alleges that Defendants sold him a new motor vehicle that did not conform to the Manufacturer's express warranties. Moreover, Plaintiff alleges that Defendants did not make the repairs necessary to conform the vehicle to said express warranties after a reasonable number of attempts and otherwise committed willful and/or negligent acts to Plaintiff's detriment.

3.      As a direct result of Defendants' unlawful, unfair, unconscionable, deceptive, reckless, willful and negligent actions, Plaintiff suffered monetary loss, consequential and incidental damages, compensatory damages, emotional and mental distress, aggravation, anxiety, loss of use, annoyance and inconvenience.

## PARTIES

4.      Plaintiff Tyler Rich is a natural person residing in Marion County, West Virginia, and is a "consumer" pursuant to the WVCCPA and "buyer" pursuant to the UCC.

5.      Defendant Manufacturer is a foreign corporation authorized to do business and doing business in Kanawha County, West Virginia.   Defendant Manufacturer is the "warrantor" of the motor vehicle that is the subject of this civil action.

6.      Defendant Dealer is a corporation organized and existing pursuant to the laws of West Virginia and doing business in Marion County, West Virginia.  Defendant Dealer is a "seller" and "merchant" pursuant to the UCC, and a "person" and "authorized dealer" pursuant to the WVCCPA.

7.      Defendant Lender is a West Virginia credit union doing business in West Virginia.   Pursuant to state and federal law, and under the express terms of the retail installment sales agreement executed as part of the subject transaction, Defendant Lender is subject to all claims and defenses Plaintiff has against Manufacturer and Dealer.

8.      Upon information and belief, each Defendant was the principal, agent or employee of each other Defendant, and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to the Plaintiff for the relief prayed for herein.

## FACTUAL BACKGROUND

9. On or about June 30, 2016, Plaintiff entered into a motor vehicle purchase contract with Dealer for the purchase of a 2015 Grand Jeep Cherokee, Vehicle Identification Number 1C4RJFBM1FC141738, hereinafter "vehicle" or "subject vehicle."

10. Plaintiff purchased the subject vehicle primarily for personal use.

11. Plaintiff's purchase of the subject vehicle was accompanied by a "manufacturer's express warranty" and "warranty," as defined pursuant to the WVCCPA.

12. Plaintiff financed the purchase of the subject vehicle, at least in part, through Lender.

13. The aforementioned warranty formed part of the basis of the bargain of Plaintiff's contract for purchase of the subject vehicle.

14. The aforementioned warranty is set forth in documents provided to Plaintiff by Defendant Dealer.

15. The aforementioned warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the warranty booklet and the subject vehicle's owner's manual.

16. After purchasing the subject vehicle, Plaintiff discovered and experienced repeated nonconformities that substantially impaired the use, value and/or safety of the vehicle.

17. As a result, Plaintiff returned the subject vehicle to Defendant Dealer for repair. In fact, the subject vehicle has been to authorized dealers for repair attempts at least six times.

18.     Despite Plaintiff's efforts to allow Defendants an opportunity to repair the subject vehicle, Defendants Dealer and Manufacturer failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.

19.     Plaintiff notified Defendants Dealer and Manufacturer of the defective conditions of the subject vehicle.

20.     Defendant Manufacturer failed and refused to provide a comparable replacement vehicle and to reimburse Plaintiff pursuant to Plaintiff's rights under West Virginia law.

21.     Defendants Dealer and Manufacturer promoted its "eco-diesel" system, along with its alleged fuel efficiency and low emissions.

22.     Howeve, upon information and belief the eco-diesel system is flawed and the vehicles so equipped actually emit far greater amounts of pollutants than advertised and promoted.

23.     Also, upon information and belief, the subject vehicle's fuel economy is poorer than advertised and promoted.

24.     Plaintiff recalls seeing advertising materials for the eco-diesel system and the low-emissions aspects of the diesel engine in the subject vehicle prior to purchasing it.

25.     Plaintiff reasonably relied upon Defendant Dealer and Manufacturer's advertising materials.

26.     Upon information and belief, the subject vehicle contains a "defeat device" allowing it to "cheat" emissions testing and this device and deceptive advertising relating to it is the subject of a class action.

27.   Plaintiff would not have purchased the subject vehicle if he had known the actual status of the eco-diesel system.

28.   Upon information and belief, the fact that the subject vehicle has an eco-diesel engine diminishes its value.

29.   Defendants' actions were willful, wanton and/or carried out with reckless disregard for the rights of the Plaintiff.

30.   As a result of Defendants' actions, Plaintiff suffered monetary loss, incidental, consequential, actual and compensatory damages, emotional and mental distress, loss of use, aggravation, anxiety, annoyance and inconvenience.

## CLAIMS FOR RELIEF

### First Claim

### [Violation of Lemon Law]

31.   The preceding paragraphs are hereby realleged and incorporated herein.

32.   The subject vehicle is a "motor vehicle" pursuant to *W. Va. Code* §46A-6A-2(4).

33.   Defendant Manufacturer is a "manufacturer" pursuant to *W. Va. Code* §46A-6A-2(2).

34.   The express warranties described herein are each a "manufacturer's express warranty" and "warranty" pursuant to *W. Va. Code* §46A-6A-2(3).

35.   The subject vehicle's defects substantially impaired the use or market value of the vehicle.

36.   Defendants were adequately notified of these defects and given a reasonable number of opportunities to remedy same.

5

37.    The acts of Defendants and each of them in refusing or failing to repair Plaintiff's vehicle, so as to bring it into conformity with the express and implied warranties, deprived Plaintiff of his rights pursuant to the express and implied warranties offered by Defendants, and of his rights pursuant to the provisions of *W. Va. Code* §46A-6A-1, *et seq.*

38.    Defendants failed to repair Plaintiff's defective vehicle within a reasonable time period and did not conform said vehicle to all warranties offered by Defendants.

39.    Moreover, Defendants refused Plaintiff's request for a comparable replacement vehicle.

40.    Plaintiff has performed each and every duty required of him under the terms of the warranty agreement, and under the provisions of *W. Va. Code* §46A-6A-1, *et seq.*, except as may have been excused or prevented by the conduct of Defendants, as herein alleged.

41.    Defendants' conduct constitutes a violation of the provisions of *W. Va. Code* §46A-6A-1, *et seq.*

## Second Claim

### [Breach of Express Warranties]

42.    The preceding paragraphs are hereby realleged and incorporated herein.

43.    Defendants Dealer and Manufacturer expressly warranted that: (a) the subject vehicle was free from defects, defective parts and workmanship; (b) the subject vehicle was so engineered and designed as to function without requiring unreasonable maintenance and repairs; (c) in the event the subject vehicle was not free from defects, defective parts, or workmanship, Defendants would repair or replace same without cost; and/or (d) any such defects or non-conformities would be cured within a reasonable time period.

6

44.   Defendants further expressly warranted that all repairs were performed in a good and workmanlike manner, and that the vehicle was fully repaired.

45.   Defendants breached the aforementioned express warranties.

### Third Claim

### [Breach of Implied Warranty of Merchantability]

46.   The preceding paragraphs are hereby realleged and incorporated herein.

47.   At all times relevant to this matter, Defendants Manufacturer and Dealer were "merchants" with respect to motor vehicles, as that term is defined in the UCC.

48.   A warranty that the subject vehicle was in merchantable condition was implied by law in the instant transaction, pursuant to the UCC and the WVCCPA. *See W. Va. Code* §46-2-314 and *W. Va. Code* §46A-6-107.

49.   The subject vehicle was not in merchantable condition when sold to Plaintiff, or at any time thereafter, and was not fit for the ordinary purpose for which a vehicle is used.

50.   Defendants Manufacturer and Dealer breached the warranty of merchantability implied by law in the instant transaction.

### Fourth Claim

### [Breach of Implied Warranty of Fitness]

51.   The preceding paragraphs are hereby realleged and incorporated herein.

52.   A warranty that the subject vehicle was fit for the particular purpose for which it was intended was implied by law in the instant transaction pursuant to the UCC and the WVCCPA. *See W. Va. Code* §46-2-315 and *W. Va. Code* §46A-6-107.

53.   The subject vehicle was not fit for the particular purpose for which it was intended.

7

54.    Defendants Manufacturer and Dealer breached the implied warranty that the motor vehicle was fit for the particular purpose implied by law in the instant transaction.

## Fifth Claim

### [Cancellation of Contract by Rejection]

55.    The preceding paragraphs are hereby realleged and incorporated herein.

56.    As a result of the subject vehicle's defects and non-conformities, Plaintiff rightfully and effectively rejected acceptance, and/or hereby rejects acceptance, of the subject vehicle pursuant to the UCC.

57.    At all times relevant hereto, Defendants failed to comply with Plaintiff's revocation of the subject vehicle, and Defendants refused to return all moneys paid by Plaintiff.

## Sixth Claim

### [Cancellation of Contract by Revocation of Acceptance]

58.    The preceding paragraphs are hereby realleged and incorporated herein.

59.    In the alternative to his Fifth Claim, *supra*, Plaintiff rightfully and effectively revoked acceptance, and/or hereby revokes acceptance, of the subject vehicle pursuant to the UCC.

60.    Plaintiff accepted the subject vehicle without discovery of all of the nonconformities and defects resulting from Defendants' unlawful conduct and/or breaches of warranty.

61.    Plaintiff's acceptance of the vehicle was reasonably induced by both the difficulty of discovery prior to acceptance and by Defendants' assurances.

8

62.     Plaintiff accepted the vehicle on the reasonable assumption that all of the nonconformities and defects resulting from Defendants' unlawful conduct and/or breaches of warranty would be cured within a reasonable time period.

63.     The nonconformities and defects resulting from Defendants' unlawful conduct and/or breaches of warranty were not, or could not be, seasonably cured.

64.     At all times relevant hereto, Defendants have failed to comply with Plaintiff's revocation of acceptance of the vehicle, and have refused to return all moneys paid by Plaintiff.

### Seventh Claim

### [Magnuson-Moss Warranty Act]

65.     The preceding paragraphs are hereby realleged and incorporated herein.

66.     The subject vehicle is a "consumer product" as that phrase is defined in §2301(1) of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*, since it is normally used for personal purposes and it was, in fact, purchased primarily for personal use.

67.     Defendants are "warrantors" as that term is defined in §2301(5) of Magnuson-Moss, and the subject vehicle was manufactured after 4 July 1975.

68.     Plaintiff is a "consumer" as that term is defined in §2301(3) of Magnuson-Moss.

69.     Defendants Manufacturer and Dealer are "suppliers" and "warrantors" as those terms are defined in the §2310(4) and (5) of Magnuson-Moss.

70.     The subject vehicle's express warranties constitute a "written warranty" as that phrase is defined in §2301(6) of Magnuson-Moss.

9

71.     The actions of Defendants and each of them in failing to tender the subject vehicle to Plaintiff free of defects, and refusing to repair or replace the defective subject vehicle tendered to Plaintiff, constitute a breach of the written and implied warranties covering the new motor vehicle and hence is a violation of the Magnuson-Moss Warranty Act.

72.     Plaintiff gave Defendants a reasonable opportunity to cure their failure to comply with said warranties and Defendants did not cure.  Plaintiff otherwise performed all things agreed to and required of him under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

<u>Eighth Claim</u>

[Unfair and Deceptive Acts or Practices]

73.     The preceding paragraphs are hereby realleged and incorporated herein.

74.     Defendants Manufacturer and Dealer committed *per se* and general unfair or deceptive acts or practices in the advertisement, sale, and repair of said new motor vehicle — including, but not limited to, the following:

(a)     representing that the vehicle has certain characteristics when it does not have such characteristics in violation of *W. Va. Code* §46A-6-102(7)(E);

(b)     representing that the vehicle was of a particular quality when it was not of said quality in violation of *W. Va. Code* §§46A-6-104 and 46A-6-102(7)(G);

(c)     engaging in conduct which creates a likelihood of confusion or misunderstanding in violation of *W. Va. Code* §§46A-6-104 and 46A-6-102(7)(L);

10

(d)     the act, use or employment of a deception, fraud, misrepresentation, or the concealment, suppression, or omission of any material fact in violation of *W. Va. Code* §§46A-6-104 and 46A-6-102(7)(M);

(e)     selling a vehicle as being free of specific defects when, in fact, it was not free of specific defects;

(f)     failing to provide material financial disclosures in a form that Plaintiff could keep prior to sale;

(g)     breaching the subject vehicle's express and/or implied warranties;

(h)     failing to provide promised benefits – including, but not limited to, warranty repairs;

(i)     attempting to disclaim or limit the implied warranty of merchantability and fitness for use;

(j)     representing that repairs could be performed properly, within a reasonable period of time, when Defendants knew, or in the exercise of reasonable care, should have known that this was not the case;

(k)     failing to offer a comparable replacement vehicle as required by law, or failing to refund of the purchase price of the subject vehicle;

(l)     failing to promptly refund all moneys paid upon the rightful revocation (or rejection) of the subject vehicle and cancellation of the subject transaction; and

(m)     failing to adequately and properly inform Plaintiff about his rights and remedies with respect to the subject transaction and/or misrepresenting such rights and remedies.

11

## Ninth Claim

### [Common Law Fraud]

75.     The preceding paragraphs are hereby realleged and incorporated herein.

76.     At all time relevant hereto, Defendants had a duty to perform all repairs or cause repairs to be performed in a careful, good and workmanlike manner within a reasonable period of time.

77.     Defendants also had a duty to disclose material information regarding the emission control system, fuel economy, and efficiency of the diesel engine.

78.     Defendants had a further duty to disclose any defects or nonconformities that could not be cured within a reasonable period of time.

79.     Defendants breached the aforesaid duty of disclosure by representing, either affirmatively or by omission, that the defects or nonconformities could be seasonably cured, when they knew, or in the exercise of reasonable care, should have known the same to be untrue.

80.     Defendants further breached the aforesaid duty to disclose by representing, either affirmatively or by omission, that the subject vehicle had been properly repaired, when, in fact, the vehicle had not been adequately or properly repaired.

81.     Defendants further breached the aforesaid duty by misrepresenting the emission control system, fuel economy, and suggesting that the subject vehicle engine was a "clean diesel" and/or "low emissions."

82.     Defendants made the aforesaid representations, knowing the same to be false or with reckless disregard as to whether they were true or false or, alternatively, innocently but with the intent that Plaintiff rely on same.

12

83:     The information conveyed to Plaintiff concerning the quality of the vehicle, as outlined specifically hereinbefore, was false.

84.     Plaintiff reasonably and justifiably relied upon Defendants' representations to his detriment.

85.     Defendants benefited from such reliance.

86.     As a result of Defendants' fraud and misrepresentations, Plaintiff suffered damages – including, but not limited to, monetary loss, consequential and incidental damages, compensatory damages, emotional and mental distress, loss of use, aggravation, anxiety, annoyance and inconvenience.

87.     Defendants' conduct constitutes fraud.

### Tenth Claim

### [Constructive Fraud]

88.     The preceding paragraphs are hereby realleged and incorporated herein.

89.     Defendants induced Plaintiff to enter into the subject transaction by false representation which they were in a situation to know and which they had a duty to know were untrue.

90.     Defendants' actions constitute constructive fraud.

91.     Plaintiff was injured by Defendants' representations.

### Eleventh Claim

### [Negligent Misrepresentation]

92.     The preceding paragraphs are hereby realleged and incorporated herein.

93.     Defendants were under a duty to provide information to Plaintiff about the subject vehicle.

13

94. Defendants were under a duty to know that the information they provided Plaintiff as facts about the quality of the vehicle and its engine were in fact true at the time that they made the representations.

95. Defendants made false representations about the diesel engine, emission control system, and quality of the vehicle without knowledge on the subject without knowledge of either the truth or falsity of their representations.

96. Defendants' conduct constitutes negligent misrepresentation.

## Twelfth Claim

### [Common Law Negligence – Negligent Repair]

97. The preceding paragraphs are hereby realleged and incorporated herein.

98. Plaintiff delivered the subject vehicle to Defendants for repair of the defective condition(s) covered under the express and implied warranties.

99. On each occasion that Plaintiff returned the subject vehicle for repair, Plaintiff is informed and believes, and thereupon alleges, that Defendants attempted to repair the new motor vehicle pursuant to their obligations under the express and implied warranties and under *W. Va. Code* §46A-6A-1, *et seq.*

100. Defendants owed a duty of care to Plaintiff to perform repairs on the subject vehicle in a good and workmanlike manner within a reasonable time period.

101. Defendants breached this duty.

102. Defendants' repair efforts were performed negligently, carelessly, and recklessly.

14

103. Nonetheless, when Plaintiff picked up his vehicle after Defendants' repair attempts, Defendants represented to Plaintiff that the repairs were complete, or that no repairs were necessary.

104. A reasonable merchant in the same or similar circumstances would have performed the repairs in a proper, good and workmanlike fashion.

### Thirteenth Claim

### [Breach of Duty of Good Faith]

105. The preceding paragraphs are hereby realleged and incorporated herein.

106. Defendants Manufacturer and Dealer breached the duty of good faith implied in the transaction, pursuant to the UCC, *W.Va. Code* §46-1-203, by, *inter alia*:

(a) breaching the express and implied warranties hereinbefore described;

(b) refusing to provide Plaintiff a comparable replacement vehicle pursuant to state law;

(c) misrepresenting the condition of the subject vehicle; and

(d) failing to remedy the problems brought about by Defendants' unlawful conduct in a timely fashion.

### Fourteenth Claim

### [Unconscionability]

107. The preceding paragraphs are hereby realleged and incorporated herein.

108. Given the condition of the subject vehicle at the time of sale, the purchase price charged, and paid, for the vehicle was unconscionable as a matter of law.

109. Given the conduct of Defendants, the subject transaction was unconscionable, or was induced by unconscionable conduct.

## PRAYER

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

1. That the contract involved herein be declared canceled by rejection, rescission, or revocation of acceptance;

2. That the Court enter a declaratory judgment, pursuant to *W. Va. Code* §55-13-1, *et seq.*, declaring the acts of Defendants to be in violation of the WVCCPA, the UCC, and/or the Magnuson-Moss Warranty Act;

3. That the Court enter a permanent injunction against Defendants ordering them to cease and desist from engaging in the unlawful acts described hereinabove;

4. That the Court enter a permanent injunction against Defendants ordering them to establish an ongoing training program for their employees on the subject of consumer rights in West Virginia;

5. That Plaintiff be awarded damages against Defendants, in an amount to be determined at trial, that fairly and reasonably compensates him for moneys lost as a result of Defendants' unlawful acts;

6. That Plaintiff be awarded additional damages against Defendants, in an amount to be determined at trial, that fairly and reasonably compensates him for emotional and mental distress, loss of use, aggravation, anxiety, annoyance and inconvenience suffered as a result of Defendants' unlawful acts;

7. That Plaintiff be awarded consequential and incidental damages against Defendants, in an amount to be determined at trial;

8. That Plaintiff be awarded actual damages or two hundred dollars, whichever is greater, pursuant to *W. Va. Code* §46A-6-106 of the WVCCPA;

9.     That Plaintiff, in addition to any actual damages, be awarded statutory penalties pursuant to *W. Va. Code* §46A-5-101, as adjusted for inflation pursuant to *W. Va. Code* §46A-5-106, for each violation of the WVCCPA;

10.     That Plaintiff be awarded punitive damages against Defendants, in an amount to be determined at trial, for the willful, wanton and/or reckless disregard for his legal rights;

11.     That Plaintiff be awarded his costs – including a reasonable attorney fee – pursuant to *W.Va. Code* §46A-5-104, *W.Va. Code* §46A-6A-4, the Magnuson-Moss Act, the common law, and the general authority of this Court;

12.     That Plaintiff be awarded any and all additional damages against Defendants, in an amount to be determined at trial;

13.     That Plaintiff be awarded prejudgment and postjudgment interest on all of the aforementioned damages, as allowed by law; and

14.     That Plaintiff be awarded such further and general relief as this Court may deem appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES SO TRIABLE.**

**TYLER RICH**
Plaintiff
By Counsel

Kristina Thomas Whiteaker (State Bar No. 9434)
David L. Grubb (State Bar No. 1498)
THE GRUBB LAW GROUP
1114 Kanawha Boulevard, East
Charleston, WV 25301
304-345-3356 (telephone)
304-345-3355 (facsimile)

17

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

TYLER RICH,

      Plaintiff,

v.                                       Civil Action No. 18-C-1405
                                       Judge Jennifer Bailey

FCA US LLC, a foreign corporation, URSE
DODGE, INC., a West Virginia corporation, and
FAIRMONT FEDERAL CREDIT UNION,

      Defendants.

### PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS, AND REQUEST FOR ADMISSIONS TO DEFENDANT FCA US LLC

TO:    FCA US LLC
        Agent:  CT Corporation System
        1627 Quarrier Street
        Charleston, WV  25311

Comes now Plaintiff, by counsel, and respectfully propounds the following interrogatories and requests upon Defendant FCA US LLC ("FCA").  In accordance with Rules 33, 34 and 36 of the West Virginia Rules of Civil Procedure, Plaintiff calls upon Defendant FCA to answer these interrogatories and requests within forty-five (45) days of service hereof.

### INTERROGATORIES

1.     Please identify, by name, address, telephone number, and job title, the person(s) answering or assisting in answering these interrogatories.

**ANSWER:**

2.      Please identify, by name, address, telephone number, and job title, each of your employees who communicated with Plaintiff regarding the 2015 Grand Jeep Cherokee, hereinafter "subject vehicle," stating the approximate date and substance of each communication.

**ANSWER:**

3.      Please identify, by name, address, telephone number, and job title, each of your employees who has driven the subject vehicle, stating the approximate date and reason the vehicle was driven.

**ANSWER:**

4.      Please identify, by name, address, telephone number, and job title, each of your employees who has at any time worked on, repaired, serviced or inspected the subject vehicle, stating the approximate date and substance of the activity.

**ANSWER:**

5.      Please identify each and every document that you may use to support your defenses in this case.

**ANSWER:**

6.      If not already identified in response to a previous Interrogatory, *supra*, please identify each and every individual, by name, address, telephone number, and job title, who has any information supportive of your claims or defenses related to this civil action.

**ANSWER:**

7.      Please explain and describe -- with specificity and detail -- any information you have regarding the nature of, and reasons for, all warranty repairs performed on the subject vehicle.

**ANSWER:**

2

8.    Please identify each of the warranty claims submitted to you by any of your authorized dealers regarding the subject vehicle.  Please include warranty claims submitted both <u>before</u> and <u>after</u> delivery of the subject vehicle to Plaintiff.  For each such warranty claim, please state the total dollar amount paid (further itemized to reflect the amount(s) paid for parts, labor and any other charges).

<u>ANSWER:</u>

9.    If you rejected any warranty claims, please identify the claim, state the dollar amount of the claim and provide a detailed explanation of the reason said claim was rejected.

<u>ANSWER:</u>

10. ·   With respect to any repair, alteration, restoration, preparation or similar service performed to the subject vehicle prior to delivery to Plaintiff, please state:  (a) the date thereof; (b) the name and address of the person or entity performing such service; (c) the nature of the work and/or service performed; (d) the cost of the labor for such work and/or service; and (e) a list of the parts, by name and part number, and/or materials used in the performance of such work and/or service.

<u>ANSWER:</u>

11.    If you have been a party (or otherwise involved in any lawsuit, arbitration proceeding or governmental administrative charge or proceeding) alleging design defects, manufacturing defects, safety problems or breach of warranty with respect to any vehicle equipped as the vehicle that is the subject of this action, please:  (a) identify the party filing the claim or charge; (b) state the date you first received notice of the claim or charge; (c) identify the attorney or other representative for the party filing the charge; (d) state the docket number and venue of the case; (e) identify, by name, address, telephone number, and job title, every expert witness who has

3

given report or testimony (whether by deposition or personal appearance) in support of, or in opposition to, the charges; (f) with respect to subparagraph (e), *supra*, state the substance of the expert's report or testimony; and (g) state whether the expert witness(es) identified in subparagraph (e) above was retained, engaged or assigned to such duties by you or any of your subsidiaries, divisions or authorized dealers.

**ANSWER:**

12.     Please identify by date, number, and substance any service bulletins promulgated by you or any of your subsidiaries, divisions or authorized dealers applicable to the subject vehicle.

**ANSWER:**

13.     Please identify by title, author, job description, representative capacity and substance, any report, memorandum, or other document describing any design, engineering, manufacturing or quality conditions, defects, or other problems regarding the subject vehicle (or any of its components) that was prepared by any agent, person, representative, entity or employee hired or paid by you or any of your subsidiaries, divisions or authorized dealers.

**ANSWER:**

14.     Please identify any statistics, memoranda, studies, reports, or other documents reflecting the depreciation rate for the value of the subject vehicle. Please state the substance of each such document and identify the document by title, author and date.

**ANSWER:**

15.     Please state whether there has ever been any recall (or other required repairs or modifications) applicable to the subject vehicle. If so, please identify: (a) the date the recall was issued (or the date that other repairs or modifications were required to be performed); (b) the nature of any necessary alterations or required repairs, including the name and part number of the parts

4

inspected, altered, modified, replaced or repaired; (c) whether the recall was voluntary or due to a government request or order; and (d) if due to a government request or order, identify the governmental agency involved.

**ANSWER:**

16.     Please state whether the make and model of the subject vehicle has ever been the subject of an investigation or report by any governmental agency. If so, please identify: (a) the name and address of the governmental agency involved in the investigation; (b) the alleged problem or defect investigated; (c) the date(s) of the investigation; (d) whether any tests or inspections were conducted in connection with the investigation and, if so, the name and address of the person or entity conducting such tests or inspections; and (e) the name and address of each person or entity having custody or control of any reports, memoranda, studies, or other documents generated as a result of, or in connection with, said investigation.

**ANSWER:**

17.     If you claim or allege that the subject vehicle was improperly maintained, misused, or abused in any manner that would be relevant to the conditions, defects, or problems about which Plaintiff is complaining in this lawsuit, please state the nature of such improper maintenance, misuse or abuse and the factual basis for your claim or allegation.

**ANSWER:**

18.     Please identify, by name, address, telephone number, and job title, each person known to you who has knowledge of any facts relevant to the allegations contained in Plaintiff's Amended Complaint. With respect to each person, please state: (a) whether you will seek to have such person qualified as an expert; (b) the substance of any facts and/or opinions you intend to offer by way of such person's testimony; and (c) whether such person has prepared or given any

statement or report in connection with the subject matter of this lawsuit.  If so, please state:  (d) whether the statement or report was oral or written; (e) the date thereof; and (f) the substance thereof.

**ANSWER:**

19.    Please identify all terms and conditions, in detail, of any guarantees, warranties, and/or service contracts made (or entered into) by you or your agents regarding the subject vehicle.

**ANSWER:**

20.    Please identify any standards, guidelines, or other specifications (from any source) in a published form relating to the components of the subject vehicle that Plaintiff alleges are defective.  Please provide a description of, or citation to, such standard, guideline, or specification – including the date of publication and/or promulgation of same.

**ANSWER:**

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.    Please produce all documents used in answering the foregoing Interrogatories and/or all documents that you were requested to identify in the attached Interrogatories.

**RESPONSE:**

2.    Please produce the most recent technical service bulletin <u>index</u> for the subject vehicle.

**RESPONSE:**

3.    Please produce each and every technical service bulletin issued for the subject vehicle concerning any defect or condition about which Plaintiff complained and that is reflected in the warranty repair records of FCA.

**RESPONSE:**

4.      Please produce the warranty claims history for the subject vehicle.

**RESPONSE:**

5.      To the extent not already provided, please produce any printout, microfiche, or other electronic record of dealer input regarding warranty claims and the warranty repair history of the subject vehicle.

**RESPONSE:**

6.      To the extent not already provided, please produce copies of your complete file(s) on the subject vehicle held in any zone, district, regional and/or national offices, including, but not limited, to the following:  (a) documents relating to inspections conducted by you prior to shipment of the vehicle to the dealership; (b) all documents relating to transit from manufacturer to dealer; (c) records and claims relating to any damage in transit; (d) pre-delivery reports and records; (e) service records; (f) repair orders; (g) field reports and/or inspections; (h) documents related to customer assistance requests; (i) warranty claims for reimbursement; (j) records of payment on warranty claims (including dealer warranty claims) or denial thereof; (k) authorizations to proceed with service work; (l) invoices, including parts orders; (m) dealer service copies and dealer part copies for repair orders; and (n) communications between Plaintiff and/or Plaintiff's representative(s) and any or all Defendants, including FCA.

**RESPONSE:**

7.      To the extent not already provided, please produce all documents related specifically to the subject vehicle, or to Plaintiff, which are stored in any computer database or which are otherwise accessible by computer.

**RESPONSE:**

7

8.      To the extent not already provided, please produce all documents including, but not limited to, warranty policy and procedure manuals that were in effect during the period Plaintiff possessed the subject vehicle and that relate to your policies regarding warranty work, warranty reimbursements, vehicle replacements, or vehicle reimbursements.

**RESPONSE:**

9.      To the extent not already provided, please produce all documents that describe or set forth policies regarding customer relations in effect at the time the subject vehicle was purchased by Plaintiff. This request includes, but is not limited to, field operations manuals, other manuals or guidelines and all other documents intended for use by national, regional, district or zone customer service representatives, parts and service representatives, and/or dealership representatives in the performance of their jobs.

**RESPONSE:**

10.     To the extent not already provided, please produce all investigation manuals or other manuals or documents which set forth policy or procedures regarding the investigation or handling of customer complaints.

**RESPONSE:**

11.     To the extent not already provided, please produce all documents prepared by you or on your behalf, or which you have received, that summarize, review or otherwise discuss the West Virginia new motor vehicle warranties law (lemon law) and/or the Magnuson-Moss Warranty Act, or any part thereof, that you have provided or made available to your customer service representatives, other employees or dealership personnel.

**RESPONSE:**

8

12.    To the extent not already provided, please produce all reports, studies, memoranda, analyses or other documents prepared or reviewed by you that relate to the complaints or alleged nonconformities, conditions or defects contained in Plaintiff's Amended Complaint or described in the warranty claims history of the subject vehicle by any purchaser of a 2015 Grand Jeep Cherokee.

**RESPONSE:**

13.    To the extent not already provided, please produce all literature made available to Defendant Urse Dodge, or any other dealer, that assists or in any way relates to the service and repair of the nonconformities, conditions or defects complained of by Plaintiff or any previous owner concerning the subject vehicle. This includes a printout of all data accessible by computer, as well as the following: technical service bulletins; other service or repair directives, instructions or suggestions; recall notices; service campaign notices; and/or letters to owners that relate or refer to any of the nonconformities, conditions or defects complained of by Plaintiff or any previous owner of the subject vehicle.

**RESPONSE:**

14.    To the extent not already provided, please produce a copy of your complete file relating to any prior arbitration proceeding, other formal or informal alternative dispute resolution proceeding, or other legal proceeding of any kind involving the subject vehicle.

**RESPONSE:**

15.    To the extent not already provided, please produce the shop manual for the subject vehicle. Alternatively, please produce the portion of the shop manual that specifically addresses or relates to any of the nonconformities, conditions or defects contained in the warranty claims history, or that were complained of by Plaintiff or any previous owner of the subject vehicle.

**RESPONSE:**

16.    To the extent not already provided, please produce copies of every warranty that applies to the subject motor vehicle.  If you do not have a copy of this document, then provide a statement detailing the terms of each and every warranty that applies to the subject vehicle.

**RESPONSE:**

17.    To the extent not already provided, please produce all documents provided by you to the Defendant Urse Dodge regarding the condition of the subject motor vehicle.

**RESPONSE:**

18.    To the extent not already provided, please produce all advance service bulletins, hot sheets, and/or special service messages applicable to the subject vehicle that address any of the nonconformities, conditions or defects contained in the warranty claims history, or that were complained of by Plaintiff or any previous owner of the subject vehicle.

**RESPONSE:**

19.    To the extent not already provided, please produce all recall documents applicable to the subject vehicle, including but not limited to those related to any of the nonconformities, conditions or defects contained in the warranty claims history, or that were complained of by Plaintiff or any previous owner of the subject vehicle.

**RESPONSE:**

20.    To the extent not already provided, please produce all maintenance schedules and/or service recommendations published by or on behalf of Defendant FCA with respect to any of the nonconformities, conditions or defects contained in the warranty claims history, or that were complained of by Plaintiff or any previous owner of the subject vehicle.

**RESPONSE:**

21.     To the extent not already provided, please produce all documents relating in any way to any examinations, tests, or inspections performed with respect to the subject vehicle.

**RESPONSE:**

22.     To the extent not already provided, please produce all service contract documents applicable to the subject vehicle.

**RESPONSE:**

23.     To the extent not already provided, please produce all warranty repair documents applicable to the subject vehicle, including by way of example but not by limitation, warranty repair orders, warranty claim forms and warranty payment history.

**RESPONSE:**

24.     To the extent not already provided, please produce all repair orders and parts invoices applicable to the subject vehicle, specifically including mechanics' notes.

**RESPONSE:**

25.     To the extent not already provided, please produce all documents relating to the dealer's pre-delivery preparation of the subject vehicle.

**RESPONSE:**

26.     To the extent not already provided, please produce all documents reflecting any service, adjustments, repairs or restorations to the subject vehicle prior to delivery to Plaintiff.

**RESPONSE:**

·27.    To the extent not already provided, please produce all statements taken by or on behalf of Defendant(s) from any person with respect to the subject matter of this action.

**RESPONSE:**

11

28.     To the extent not already provided, please produce any photographs relating to the subject matter of this action.

**RESPONSE:**

29.     To the extent not already provided, please produce all promotional brochures, flyers, posters, folders, or other similar materials published by or on behalf of Defendant FCA applicable to the subject vehicle.

**RESPONSE:**

30.     To the extent not already provided, please produce any notes, memoranda, correspondence, telephone logs, or similar materials, relating in any way to the subject matter of this action.

**RESPONSE:**

31.     To the extent not already provided, please produce copies of any manufacturer, industry, state and/or federal standards (or specifications) with respect to any of the conditions, defects, or components contained in the warranty claims history, or that were complained of by Plaintiff or any previous owner of the subject vehicle.

**RESPONSE:**

32.     To the extent not already provided, please produce copies of any expert reports or opinion letters that relate to the subject matter of this litigation.  For each expert preparing such report or opinion letter, please provide a copy of the expert's résumé or curriculum vitae.

**RESPONSE:**

## REQUEST FOR ADMISSIONS

Before responding to the following Request for Admissions, please refer to W.Va.R.Civ.P., Rules 36 and 37. With this in mind, Defendant FCA is requested to admit that each of the following statements is true and accurate:

1.      FCA has no basis to dispute the fact that Plaintiff acquired an interest in the subject vehicle primarily for personal, family or household purposes.

**RESPONSE:**

2.      At all times relevant to this case, Plaintiff was entitled to enforce the obligations of the manufacturer's warranty.

**RESPONSE:**

3.      Plaintiff is a consumer pursuant to West Virginia's lemon law. *See W. Va. Code* §46A-6A-2(1).

**RESPONSE:**

4.      At all times relevant to this case, FCA was engaged in the business of manufacturing, assembling or distributing motor vehicles.

**RESPONSE:**

5.      At all times relevant to this case, FCA manufactured, assembled or distributed to dealers at least ten new motor vehicles.

**RESPONSE:**

6.      FCA is a "manufacturer" pursuant to West Virginia's lemon law. *See W. Va. Code* §46A-6A-2(2).

**RESPONSE:**

7.     The subject vehicle is a "motor vehicle" pursuant to the West Virginia's lemon law. *See W. Va. Code* §46A-6A-2(4).

**RESPONSE:**

8.     The subject vehicle was manufactured, assembled or distributed by FCA.

**RESPONSE:**

9.     Urse Dodge, Inc. ("Urse Dodge") is an authorized dealer of FCA.

**RESPONSE:**

10.     The subject vehicle was purchased in West Virginia on or after the first day of January, 1984.

**RESPONSE:**

11.     The nonconformities, defects or conditions complained of in this lawsuit substantially impair the use of the subject vehicle.

**RESPONSE:**

12.     The nonconformities, defects or conditions complained of in this lawsuit substantially impair the market value of the subject vehicle.

**RESPONSE:**

13.     Plaintiff reported the relevant nonconformities, defects or conditions to FCA, its agents or its authorized dealers during the term of the express warranties covering the subject vehicle.

**RESPONSE:**

14.     Plaintiff provided FCA, its agents or its authorized dealers with an opportunity to repair the subject vehicle.

**RESPONSE:**

14

15.     FCA, its agents or its authorized dealers were unable to conform the subject vehicle to the applicable express warranties after a reasonable number of attempts.

**RESPONSE:**

16.     FCA has not offered to replace the subject vehicle with a comparable new motor vehicle.

**RESPONSE:**

17.     At least one of the nonconformities, defects or conditions complained of in this lawsuit was subject to repair three or more times by FCA, its agents or its authorized dealers.

**RESPONSE:**

18.     At least one of the nonconformities, defects or conditions complained of in this lawsuit is likely to cause death or serious bodily injury if the subject vehicle is driven.

**RESPONSE:**

19.     In deciding whether to purchase a motor vehicle, it is reasonable for a consumer to rely upon the written warranty provided by FCA.

**RESPONSE:**

20.     FCA has an agreement with Urse Dodge to sell at retail to the general public motor vehicles that are manufactured, assembled, or distributed by FCA.

**RESPONSE:**

21.     Pursuant to the agreement with FCA, Urse Dodge is obligated to honor the express warranty of FCA on vehicles of the same make as the subject vehicle.

**RESPONSE:**

15

22.    The dealership agreement with FCA contemplates benefits to be derived by each party through the performance of warranty repairs and services by Urse Dodge on behalf of FCA for consumers (including Plaintiff) of vehicles manufactured by FCA.

**RESPONSE:**

23.    For purposes of fulfilling the warranty obligations of FCA, Urse Dodge acts under the authority of FCA.

**RESPONSE:**

24.    For purposes of fulfilling the warranty obligations of FCA, Urse Dodge acts under the direction of FCA.

**RESPONSE:**

25.    For purposes of fulfilling the warranty obligations of FCA, Urse Dodge acts under the control of FCA.

**RESPONSE:**

26.    For purposes of fulfilling the warranty obligations of FCA, Urse Dodge acts as an agent of FCA.

**RESPONSE:**

27.    For purposes of fulfilling a manufacturer's warranty obligations, courts have held that authorized dealers act as agents of the manufacturer.

**RESPONSE:**

28.    FCA has no factual basis to dispute that while in the possession of Plaintiff, the subject vehicle was regularly serviced and in all other respects was driven and maintained with proper and reasonable care.

**RESPONSE:**

16

29.    FCA distributed (or caused to be distributed) advertisements in print and/or electronic media for the purpose of encouraging or soliciting consumer transactions.

**RESPONSE:**

30.    Prior to the purchase of the subject vehicle by Plaintiff, FCA distributed (or caused to be distributed) advertisements in print and/or electronic media setting forth claims of the subject vehicle's quality and performance.

**RESPONSE:**

31.    Prior to the purchase of the subject vehicle by Plaintiff, FCA represented through its advertising and otherwise that it possessed a high degree of manufacturing skill and judgment.

**RESPONSE:**

32.    Prior to the purchase of the subject vehicle by Plaintiff, FCA represented through its advertising and otherwise that the vehicles which it manufactured and distributed were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are designed and used.

**RESPONSE:**

33.    The subject vehicle was not of merchantable quality at the time of sale to Plaintiff.

**RESPONSE:**

34.    In the calendar year during which Plaintiff acquired an interest in the subject vehicle, FCA did not maintain a repair facility in West Virginia.

**RESPONSE:**

35.    FCA violated the West Virginia Consumer Credit and Protection Act in dealing with Plaintiff.

**RESPONSE:**

17

36.     FCA violated the West Virginia Consumer Protection – New Motor Vehicle Warranties Law ("lemon law") in dealing with Plaintiff.

**RESPONSE:**

37.     With respect to the subject vehicle, Plaintiff performed all conditions precedent to private enforcement of the West Virginia lemon law prior to filing this lawsuit.

**RESPONSE:**

38.     Prior to the filing of this lawsuit, FCA was in violation of the Magnuson Moss Warranty Act by its failure to comply with its warranty obligations regarding the subject vehicle.

**RESPONSE:**

39.     Prior to the filing of this lawsuit, FCA did not provide Urse Dodge with any instructions on how to comply with West Virginia's lemon law.

**RESPONSE:**

                                          **TYLER RICH**
                                          Plaintiff
                                          By Counsel


Kristina Thomas Whiteaker (State Bar No. 9434)
David L. Grubb (State Bar No. 1498)
THE GRUBB LAW GROUP
1114 Kanawha Boulevard, East
Charleston, WV 25301
304-345-3356 (telephone)
304-345-3355 (facsimile)

18

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

TYLER RICH,

     Plaintiff,

v.                               Civil Action No. 18-C-1405
                                    Judge Jennifer Bailey

FCA US LLC, a foreign corporation,
URSE DODGE, INC., a West Virginia
corporation, and FAIRMONT FEDERAL
CREDIT UNION,

     Defendants.

## CERTIFICATE OF SERVICE

I, Kristina Thomas Whiteaker, counsel for Plaintiff, do hereby certify that I have this 27th day of November, 2018, served a true copy of *Plaintiff's First Set of Interrogatories, Request for Production of Documents and Things, and Request for Admissions to Defendant FCA US LLC* upon Defendant FCA US LLC via service by the West Virginia Secretary of State, to the following:

                    FCA US LLC
            Agent:  CT Corporation System
                1627 Quarrier Street
                Charleston, WV 25311

Kristina Thomas Whiteaker (State Bar No. 9434)
THE GRUBB LAW GROUP
1114 Kanawha Boulevard, East
Charleston, WV 25301
304-345-3356 (telephone)
304-345-3355 (facsimile)